UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JUSTIN YOUNG, individually and on behalf of all others similarly situated,<br><br>v.<br><br>ENERGY DRILLING COMPANY | Case No. 4:20-cv-01716<br><br>FLSA Collective Action |

## YOUNG'S UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT

Plaintiff Justin Young (Young) submits this Unopposed Motion to Approve FLSA Settlement of Young and the Opt-in Plaintiffs' claims under the Fair Labor Standards Act (FLSA), against Defendant Energy Drilling Company (Energy Drilling) (together, the Parties). The Parties' agreement represents a fair and reasonable resolution of a *bona fide* dispute of Young and the Opt-in Plaintiffs' FLSA claims, and the Court should approve the Parties' Settlement Agreement (Ex. 1).

The Parties' Settlement Agreement provides Young and the Opt-in Plaintiffs with a reasonable recovery in light of the risks inherent in continued litigation and trial. Energy Drilling has defended the claims asserted in this lawsuit and continues to deny that it committed any wrongdoing or violated any state or federal wage and hour law. Given the costs, risks, and delays inherent to protracted litigation balanced against the benefits of this partial settlement, the Parties' Settlement Agreement is in both Parties' best interest.

Pursuant to 29 U.S.C. § 216(b), Young respectfully requests that the Court grant approval of the terms of the Settlement Agreement.

1. **Background and Relevant Facts.**

Young filed this putative collective action on May 15, 2020, on behalf of himself and all other hourly employees who worked for, or on behalf of, Energy Drilling in the United States who were paid a bonus in the past three (3) years, alleging Energy Drilling failed to include certain non-

1

discretionary bonuses in the hourly employees' regular rates of pay for purposes of calculating their respective time-and-a-half overtime rates, in violation of the FLSA. Doc. 1. Energy Drilling denied Young's allegations and raised several affirmative defenses, including that Young and certain Opt-in Plaintiffs (1) received discretionary bonuses that were properly excluded from the regular rate of pay, (2) were paid lawfully under the applicable law, and (3) that Energy Drilling acted in good faith. Doc. 56.

On March 31, 2021, this Court granted Young's Motion for Conditional Certification, and notice was issued to a collective of "All non-exempt hourly oilfield personnel who worked as rig managers, drillers, derrickmen, motormen, floormen, and/or toolpushers for, or on behalf of, Energy Drilling in the United States and who in the past three (3) years were paid Safety bonuses and/or Beat the Curve bonuses that were not included in the formula used to calculate their overtime pay." Docs. 39; 40.

After the opt-in period closed, Energy Drilling informally produced payroll records reflecting Young and the opt-in Plaintiffs' compensation. The Parties exchanged damage models and negotiated for several weeks. On December 14, 2021, the Parties executed a formal Settlement Agreement (Ex. 1) that Plaintiff now requests the Court approve the Parties' settlement. *See generally* Ex. 1. The Parties now seek final approval of the Settlement Agreement from this Court.

2.  **Summary of Settlement Terms.**

    **A. The Gross Settlement Fund.**

The Parties agreed to settle Young's and the Opt-in Plaintiffs' FLSA claims (the "Gross Settlement Amount."). *Id.* at ¶ 2(j). The Gross Settlement Amount includes the settlement payments to Young and the Opt-in Plaintiffs, Class Counsel's attorneys' fees, Class Counsel's out-of-pocket litigation expenses, settlement administration expenses, and a Service Award to Young. *Id.* at ¶¶ 6-7. The Settlement Agreement does not include the employer's share of payroll taxes. Under the

Settlement Agreement, Class Counsel shall receive their attorneys' fees. *Id.* at ¶ 6. Likewise, Class Counsel shall receive reimbursement for the reasonable costs expended during this litigation. *Id.* at ¶ 6(b). The Settlement Agreement also provides Young with a service award to compensate him for his service as class representative. *Id.* at ¶ 6(c). All administration costs, attorneys' fees, and litigation expenses are included in the Gross Settlement Amount, and Energy Drilling shall not make any payment beyond the Gross Settlement Amount, with the exception of the employer's share of payroll taxes. *Id.* at ¶ 7-8.

### B. Class Counsel's Negotiated Fee Award.

The attorneys' fee award accounts for 40% of the Gross Settlement Amount. *Id.* at ¶ 6; *see also* Ex. B, Fitz Decl., at ¶ 18. Thus, the Parties agreed that Class Counsel shall receive attorneys' fees to compensate them for their efforts bringing and prosecuting this FLSA collective action. Ex. 1 at ¶ 6(a).

### C. The Net Settlement Amount.

As discussed throughout, the Parties agreed to a *pro rata* allocation of the Net Settlement Amount based on the number of workweeks worked by the Opt-in Plaintiffs during the applicable Class Period. To calculate the *pro rata* settlement allocations, Class Counsel calculated Energy Drilling's share of each Plaintiffs' alleged back wages under the FLSA based on the number of workweeks they worked during the three-year statutory period using pay data the Parties obtained from Energy Drilling. Using this damage model, Class Counsel applied Young's and each Opt-in Plaintiff's *pro rata* share to the Net Settlement Amount to determine Young's and each Opt-in Plaintiff's settlement payment.

The settlement payments will be distributed in 2 checks to Young and each Opt-in Plaintiff. Half of each settlement payment to each Opt-in Plaintiff will be reported on a W-2 form and represents payment for alleged unpaid overtime. *Id.* The other half will be reported on an IRS Form

1099 and represents payment for non-wage penalties and liquidated damages. *Id.* Energy Drilling is separately responsible for payment of the employer's share of payroll taxes resulting from the W-2 portion of the settlement payments. *Id.* at ¶ 7. Further, Class Counsel's attorneys' fees and costs will each be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶¶ 6. Likewise, Young's Service Award will be distributed in a single check that will be reported on an IRS Form 1099. *Id.* at ¶ 6(c).

**3.    The Court should approve the Parties' settlement.**

    **A. The Legal Standard for Approval of FLSA Settlements.**

Under the FLSA, covered employers must pay non-exempt employees overtime for all hours worked over forty (40) in a workweek. 29 U.S.C. § 207. An employer who violates the Act is liable for the unpaid overtime and may be liable for "an additional equal amount as liquidated damages" if the employer cannot "show to the satisfaction of the court that the act or omission giving rise to such action was in good faith." 29 U.S.C. §§ 216(b), 260. "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Id.* The statute of limitations for claims under the FLSA is two years, or three years if the employer's violation was willful. 29 U.S.C. § 255(a).

"If the settlement reflects 'a reasonable compromise over issues,' the court may approve it." *Villeda v. Landry's Rests., Inc.*, No. H-08-2287, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). The settlement must therefore be a fair and reasonable resolution of the Parties' bona fide dispute under the FLSA. *See Lynn's Food Stores*, 679 F.2d at 1355.

### B. The Court Should Approve the Parties' Settlement.

#### i. The Settlement Resolves a *Bona Fide* Dispute.

The Agreement resolves a bona fide dispute. In the instant case, the Parties contested the claims and defenses asserted. Plaintiffs alleged that Opt-in Plaintiffs were paid a non-discretionary bonus that was improperly excluded from their respective time-and-a-half overtime rates by Defendant and that this pay practice violated the overtime requirements of the FLSA. Defendant argued that these individuals received discretionary bonuses and thus not entitled to payment of overtime.

The Parties disputed whether collective treatment of Plaintiffs' FLSA claims is appropriate and whether Plaintiffs were entitled to liquidated damages. If the matter was not resolved by settlement, there was a risk that Plaintiffs would not succeed in pursuing collective treatment of the action. Moreover, even if Plaintiffs achieved conditional certification, Defendant intended to move for decertification of the collective class following discovery, a process that would have been time consuming and expensive for all Parties.

Throughout the litigation, Defendant denied the material facts and any violation of the FLSA, and vigorously defended its position. These facts demonstrate a bona fide dispute between the Parties. Because the Parties contest liability and the appropriate amount of overtime owed, if any, there is a *bona fide* dispute. The Parties acknowledge their claims and defenses pose risks, which informed, in part, their decision to resolve the *bona fide* disputes between them through settlement.

#### ii. The Terms of the Settlement are Fair and Reasonable.

"There is a 'strong presumption in favor of finding a settlement fair.'" *Domingue v. Sun Elec. & Instrumentation, Inc.*, Case No. 09-682, 2010 WL 1688793, at *1 (M.D. La. Apr. 26, 2010) (citing *Camp v. Progressive Corp.*, Case Nos. 01-2680, 03-2507, 2004 WL 2149079, at *5 (E.D. La. Sept. 23,

2004)). In addition, the fact "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness." *Id.*

Class Counsel has considerable experience prosecuting and settling FLSA cases, and in this case, were particularly well-informed as to the facts and circumstances of the litigation and the risk of not prevailing at trial. *See Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (holding that the court is "entitled to rely upon the judgment of experienced counsel for the parties" in assessing a settlement and "absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel"); *Shaw v. CAS, Inc.*, No. 5:17-cv-142, 2018 WL 3621050, at *3 (S.D. Tex. Jan. 31, 2018) (preliminarily approving settlement where counsel believed settlement was reasonable and adequate based on "comprehensive knowledge of the facts and legal issues"); *Liger v. New Orleans Hornets NBA Ltd. P'ship*, No. 05-1969, 2009 WL 2856246, at *4 (E.D. La. Aug. 28, 2009) ("The Court is entitled to rely on the judgment of experienced counsel in its evaluation of the merits of a . . . settlement.") (internal citations omitted). Class Counsel have served as lead counsel in numerous large-scale wage and hour class/collective actions. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017) (reversing trial court's grant of summary judgment in favor of defendant); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011) (affirming jury verdict in FLSA collective action); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006) (affirming summary judgment in favor of a nationwide class of FLSA plaintiffs). Plaintiff and Class Counsel both believe approval of the Agreement is in Plaintiffs and Opt-in Plaintiffs' best interest and that the Agreement is fair and reasonable.

      **a.**      **The Agreement Was Fairly and Honestly Negotiated.**

First, the settlement was fairly and honestly negotiated by counsel highly experienced with FLSA collective actions. Both Parties created damages calculations based on this data. The

negotiations by experienced counsel demonstrate the Settlement Agreement was fairly and honestly negotiated.

### b. The Ultimate Outcome of the Litigation Was Unknown.

Second, questions of law and fact exist as to whether Energy Drilling is liable to Young and the Opt-in Plaintiffs and, if so, in what amounts. The Parties dispute whether certain bonus payments were non-discretionary, whether Energy Drilling acted in good faith and thus whether liquidated damages are appropriate, and whether Energy Drilling acted willfully, which would affect whether Plaintiffs may recover under a two-year or three-year statute of limitations. The proposed settlement allows the Parties to resolve these matters instead of litigating these uncertain legal and factual issues.

### c. The Value of the Settlement to the Opt-in Plaintiffs Is Significant.

Third, the immediate recovery offered by the proposed settlement is even more valuable considering the legal and factual uncertainties related to the alleged liability and damages. If the Parties continue to litigate the matter instead of settling, the next steps will require the Parties to engage in lengthy and costly discovery, disputes and motion practice regarding an anticipated motion for decertification, which would likely be followed by cross-motions for summary judgment and potential trial on liability and damages. Instead of undertaking this protracted litigation course which may result in no recovery, the proposed settlement guarantees Young and the Opt-in Plaintiffs will receive a substantial recovery.

Indeed, the degree of success here is high because Energy Drilling vigorously contested Young and the Opt-in Plaintiffs' claims, denied that these Plaintiffs were improperly paid, and that any alleged damages are owed. Energy Drilling denied that the Plaintiffs are entitled to liquidated damages or that it acted willfully.

In spite of the hotly contested case, the settlement provides the Opt-in Plaintiffs with approximately 91% of the total alleged three-year back wage liability. Ex. B at ¶ 17. Even after the

7

proposed attorneys' fees and costs, the Net Settlement Amount provides an average net recovery of approximately 55% of each opt-in Plaintiffs' total alleged three-year back wage liability. *Id.* This settlement represents substantial recovery considering the ongoing risks of litigation, the defenses at issue and the real possibility of a protracted fight for unpaid overtime.

### d. The Attorneys' Fees Under the Agreement Are Reasonable.

Fifth, as discussed in greater detail *infra*, Class Counsel's fee award is fair and reasonable. *See Evans v. Jeff D.*, 475 U.S. 717, 727 (1986) ("[T]he power to approve or reject a settlement negotiated by the parties before trial does not authorize the court to require the parties to accept a settlement to which they have not agreed."); *Klier v. Elf Atochem North Am., Inc.*, 658 F.3d 468, 475 (5th Cir. 2011) (holding, in a class action, "the court cannot modify the bargained-for terms of the settlement agreement"); *In re Oil Spill by Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, 910 F.Supp.2d 891, 944 (E.D. La. 2012) ("[T]he Court is not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."), *aff'd sub nom. In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014), *reh'g en banc denied sub nom. In re Deepwater Horizon—Appeals of the Economic and Property Damage Class Action Settlement*, 756 F.3d 320 (5th Cir. 2014), *cert. denied sub nom. BP Exploration & Prod, Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014); *Blanchard v. Forrest*, CIV. A. 93-3780, 1996 WL 28526 (E.D. La. Jan. 23, 1996) (overruling the magistrate's modification to consent judgment because courts lack authority to modify a settlement agreement).

The attorney fees are reasonable. The Court may begin its analysis of a contingent attorney fee by looking at fees awarded in other courts, particularly in the Fifth Circuit. The Fifth Circuit recognizes that contingency fees are desirable—particularly in common fund cases like this one—because it is predictable, encourages settlement, and reduces incentives for protracted litigation. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 643-44 (5th Cir. 2012) ("district courts in this Circuit regularly

use the percentage method blended with a Johnson reasonableness check, and for some it is the 'preferred method.'").

**4.      The attorneys' fees and costs are reasonable.**

Class Counsel's attorneys' fees is reasonable, fair and an important provision of the Parties' agreement. Ex. 2 at ¶¶ 18-24. The FLSA provides "[t]he court … **shall**, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (emphasis added); *see also Garcia*, 770 F.3d at 1308.

Although an award of attorneys' fees under the FLSA is **mandatory**, district courts generally only examine (at most) whether the fee award in an FLSA settlement agreement is reasonable. *See Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 415 n.5 (1978) (an award of fees and costs is "mandatory for prevailing plaintiffs" in FLSA actions). Courts routinely approve settlements that includes an agreed upon fee above what Plaintiffs, Class Counsel, and Defendants agreed to. *See Whitaker v. BHP Billiton Petroleum (Americas) Inc.*, No. 4:17-cv-02698, at ECF No. 30 (S.D. Tex. Aug. 7, 2019) (approving 40% fee in FLSA settlement); *Whitlow v. Crescent Consulting, LLC*, No. 5:16-cv-01330, at ECF No. 189 (W.D. Okla. April 1, 2019) (same); *Jones v. Bison Drilling and Field Services, LLC*, No. 7:17-cv-00167, at ECF Nos. 32 & 35 (W.D. Tex. Feb. 2019) (same); *Brite v. Great Plains Analytical Services, Inc.*, No. 7:18-cv-00153, at ECF No. 24 (W.D. Tex. Feb. 12, 2019) (same); *Matthews v. Priority Energy Servs., LLC*, No. 6:15CV448, 2018 WL 1939327, at *1 (E.D. Tex. Apr. 20, 2018), adopted, 2018 WL 2193030 (E.D. Tex. May 11, 2018) (same); *Sarabia v. Spitzer Industries, Inc.*, No. 4:17-cv-02092, at ECF No. 32 (S.D. Tex. May 24, 2018) (same); *Legros v. Mud Control Equip., Co.*, No. 15-1082, 2017 WL 925730, at *3 (W.D. La. Mar. 6, 2017) (same); *see also Comeaux v. Quality Energy Svcs., Inc.*, No. 6:15-cv-02510-RGJ-PJH, ECF No. 78 (W.D. La. Jul. 20, 2017) (approving attorney fees of 40%); *Winingear v. City of Norfolk, Va.*, No. 2:12CV560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (awarding 38.44% ($1,230,250.00) in fees and costs on a $3,200,000 FLSA settlement and noting

that "this Court has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery").

In assessing the reasonableness of attorney fee awards in collective actions, courts within the Fifth Circuit consider the factors outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), which include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Rarely are all *Johnson* factors applicable. *Id.* Considering the circumstances presented herein, Class Counsel's requested attorneys' fees and litigation expenses are imminently reasonable as both as a percentage of the total common settlement fund and under the *Johnson* factors.

### A. FLSA Collective Actions are Inherently Complicated, and Class Counsel is Experienced and Skilled in Handling the Same (Factors 2-4 and 9-10).

Cases involving employee overtime rights are governed by highly technical and specialized state and federal wage statutes and regulations. *See, e.g.*, *Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) ("wage and hour collective and class actions are, by their very nature, complicated and time-consuming"). Three fundamental questions governed this case: (1) whether Energy Drilling's bonus payments to Young and the opt-in Plaintiffs were non-discretionary, and therefore should have been included in the regular rate of pay for purposes of calculating their respective overtime rates; (2) whether these questions could be resolved on a collective basis, and (3) whether Energy Drilling's alleged violations of the FLSA were made in good faith. Analysis of these questions and effective prosecution of these claims required not only extensive knowledge of applicable caselaw and regulations, but also insight on successfully litigating cases under the FLSA.

Class Counsel's skill, knowledge, reputation, and experience (factors 2, 3, and 9) are well-recognized in FLSA cases such as this. *See, e.g.*, *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183 (6th Cir. 2017); *Roussell v. Brinker Int'l, Inc.*, 09- 20561, 2011 WL 4067171 (5th Cir. Sept. 14, 2011); *Belt v. EmCare, Inc.*, 444 F.3d 403 (5th Cir. 2006). FLSA collective action cases such as this are the main focus of Class Counsel's docket. Although Class Counsel is based in Texas, both Josephson Dunlap, LLP and Brucker Burch, PLLC have a national docket of FLSA cases, with litigation across the United States. Ex. 2 at ¶¶ 3-7. In recent years, Class Counsel's joint docket has carried around or over 250 cases involving FLSA collective action claims for oilfield workers, such as this case. Further Class Counsel have litigated thousands of similar cases over the years with tremendous success. *Id.*

Class Counsel's experience has caused it to review and become familiar with a large body of documents and information concerning FLSA litigation, as well as the evidence and testimony necessary to the successful prosecution of FLSA collective actions, which benefits cases such as this and maximizes the settlement value of the case. *Id.* As one court has expressly noted, "the firms involved in this case on the Plaintiffs' side are **among the most experienced and best regarded in this specialized practice area**." *Kurgan v. Chiro One Wellness Ctrs., LLC*, No. 10-CV-1899, 2015 WL 1850599, at *4 (N.D. Ill. Apr. 21, 2015) (emphasis added); *see also Horton*, 455 F. Supp. 3d at 207 (finding Class Counsel "conduct[s] themselves professionally, demonstrate[s] deep knowledge of wage-and-hour law, and [are] diligent and responsive to the Court's orders.").

In addition to the number of Opt-in Plaintiffs, resolving the procedural issues, merits, and calculating damages is inherently risky, costly, and time-consuming. *See Whittington*, 2013 WL 6022972, at *6.

As courts in this Circuit have noted, attorneys handling such large classes are precluded by the ticking clock from taking other cases (factor 4), given that counsel took a chance on possible recovery in a contingent fee case rather than strictly working on an hourly basis. *Id.* Class Counsel spent

11

significant time and incurred out-of-pocket expenses, remuneration for which was entirely contingent on the outcome of the matter, thus making this case relatively undesirable (factor 10). *See Aragon v. Clear Water Prod. LLC,* No. 15-CV-02821-PAB-STV, 2018 WL 6620724, at *6 (D. Colo. Dec. 18, 2018). Indeed, the possibility existed in this case that no recovery would be made for the time and efforts exerted by Class Counsel.

### B. The Time and Labor Required Was Substantial and Class Counsel's Requested Costs Are Reasonable (Factors 1 and 7).

Regarding the time and efforts required of Class Counsel (factors 1 and 7), this matter has been pending for over a year. During this time, Class Counsel performed extensive work. *See* Ex. 2 at ¶¶ 13-17 (describing Class Counsel's time and effort spent on this case).

This represents a significant amount of time expended to reach resolution of this case. Here, Class Counsel's costs include reasonable out-of-pocket expenditures such as Court costs and filing fees, photocopying and duplication, postage and other delivery or service fees, Pacer charges, and legal research. *Id.* These expenses were reasonable and necessary for the successful prosecution of this case, and under the Agreement, Energy Drilling does not object to the same. *See* Ex. 1 at ¶¶ 2(k); 6(a).

### C. Class Counsel Represented Young on a Contingency Basis (Factors 5, 6, 10, 12).

Class Counsel, working on contingency, had 100% of the risk of loss, advanced considerable costs, which if not recovered, would be lost, and Class Counsel would have carried various advanced costs, as well as unrecoverable time spent. Ex. 2 at ¶¶ 13-24. Class Counsel assumed an enormous risk prosecuting this matter since there was a possibility of no recovery. *Id.*

Courts have consistently found this type of fee arrangement, under which counsel runs a significant risk of nonpayment, weighs in favor of the reasonableness of a requested fee award. *See, e.g., Aragon*, 2018 WL 6620724, at *6; *Shaw,* 2015 WL 1867861, at *4. The "process of reviewing and approving stipulated attorneys' fees in the event of a settlement [of FLSA claims] is more deferential than resolving attorneys' fees in a disputed case." *Melgar v. OK Foods*, 902 F.3d 775, 779-80 (8th Cir.

12

2018). In particular, "where the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. To the contrary, the review of FLSA settlements "requires … deference … to the parties' agreement." *Id.*

### D. Class Counsel's Requested Fee is Within the Customary Range (Factors 5, 6, 12).

As discussed *supra* in Sections 3(B) and 3(C), Class Counsel's request for attorneys' fees in the amount of 40% of the Gross Settlement is well within the range of reasonableness for contingency fee cases in this Circuit. Ex. 2 at ¶ 18.

### E. Degree of Success Obtained is High (Factor 8).

Finally, "the most critical factor in determining a fee award is the degree of success obtained". *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003). As discussed *supra* in Section 3(B), the degree of success here is high and supports Class Counsel's attorneys' fees.

**5. The Court should approve Young's service award.**

Young's requested service award is reasonable, and Energy Drilling does not object to the same. Named plaintiffs are eligible for reasonable incentive payments as part of a class or collective action settlement. *See, e.g., Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-CV-00603-RP, 2015 WL 12866212, at *6 (W.D. Tex. Dec. 23, 2015) (approving service payment award of $7,500 in FLSA collective action); *Purdie v. Ace Cash Express, Inc.*, No. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003) (approving incentive award to named plaintiffs because "Plaintiffs' commitment undoubtedly led to the proposed settlement fund."). *Chieftan Royalty Co. v. Enervest Energy Institutional Fun XIII-A, L.P.*, 888 F.3d 455, 468 (10th Cir. 2017); *Pilego v. Los Arcos Mexican Restaurants, Inc.*, 313 F.R.D. 117, 131 (D. Colo. 2016) (finding $7,500 enhancement award to named plaintiff in FLSA class and collective action reasonable and "commensurate with awards in similar cases.").

The proposed service award to Young is reasonable, and Energy Drilling does not oppose this amount. The service award is intended to recognize Young's initiative and efforts on behalf of the

Opt-in Plaintiffs and the time and effort he contributed to this lawsuit and the settlement over the last year. Indeed, Young took a substantial risk in bringing the claims relating to Energy Drilling's alleged FLSA violations. Ex. 2 at ¶¶ 18-26. In doing so, Young faced potential retaliation and blackballing from prospective employers in the oil industry who, by merely performing a quick Google search of his name, may quickly see he sued his former employer for back wages. *Id.* Moreover, Young expended significant effort and time in educating Class Counsel regarding the Plaintiffs' job experiences, compensation, and hours worked, as well as Energy Drilling's policies and procedures. *Id.* Likewise, Young assisted throughout the litigation by providing documents and information related to his work for Energy Drilling, helping prepare the Motion for Conditional Certification (including providing a supporting declaration for the same) to help the Opt-in Plaintiffs receive notice of their opportunity to join this collective action, and participating in settlement discussions and the settlement approval process to help ensure the Class Members recover their unpaid wages. *Id.* Young also participated in numerous telephone conferences with Class Counsel and their staff over the course of the litigation. *Id.*

Because Young took significant personal risks in representing the interests of the Opt-in Plaintiffs and worked diligently to ensure the Class Members could recover the wages they are allegedly due, the proposed service award agreed to by the Parties is reasonable to compensate him for these inherent risks and his substantial efforts on behalf of the Settlement Class.

**6. CONCLUSION.**

For these reasons, the Settlement Agreement should be approved and this matter be dismissed with prejudice.

**Dated: January 21, 2022.**

Respectfully submitted,

**JOSEPHSON DUNLAP**

By: */s/ Carl A. Fitz*
**Michael A. Josephson**
TX Bar No. 24014780
**Andrew W. Dunlap**
TX Bar No. 2407844
**Carl A. Fitz**
TX Bar No. 24105863
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
cfitz@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF &
THE SETTLEMENT CLASS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022, I served the foregoing pleading on all parties and/or their counsel of record via this Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure.

*/s/ Carl A. Fitz*
**Carl A. Fitz**

## CERTIFICATE OF CONFERENCE

I hereby certify that prior to filing the instant Motion, I conferred with Energy Drilling's Counsel, who confirmed Energy Drilling is unopposed to the requested relief as evidenced by the Parties' attached Settlement Agreement. *See* Ex. 1.

*/s/ Carl A. Fitz*
**Carl A. Fitz**
